IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02110-MEH

VITO JOSEPH KERSHAW,

      Plaintiff,

v.

DAVID JONES, Doctor,

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)[filed March 14, 2016; docket #37].  The parties have not requested oral argument and the Court finds it will not assist in the adjudication of the motion.  Based upon the record herein and for the reasons that follow, the Defendant's motion is granted.[1]

## BACKGROUND

      Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 as a *pro se* litigant currently incarcerated in the Arkansas Valley Correctional Facility.  Plaintiff filed the operative Amended Complaint on October 13, 2015.  (Docket #6.)

### I.    Facts

      The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Amended Complaint, which are taken

---

[1]The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636 and D.C. Colo. LCivR 40.1 on March 14, 2016.  *See* docket #36.

as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

In or about April 2015 while he was incarcerated at the Arapahoe County Detention Center, Plaintiff told the Defendant, David Jones, M.D., that his right hip had been replaced and his left hip needed replacement. Plaintiff had his prescription for pain medication faxed from Dr. Denise Hunter at Kaiser Permanente to Dr. Jones and asked for the medication, but Dr. Jones refused to provide it to him. Instead, Dr. Jones gave the Plaintiff Tylenol, Aleve, and a medication for gout (Indocin), but they did not work for his pain. A record attached to the Amended Complaint[3] reflects that on August 5, 2015, Elaine Meyer responded to Plaintiff's electronic message asking for the status of his request for "Tramadol and a follow up to any orthopedic" (docket #6 at 26) saying she saw "where [Dr. Jones] reordered your Tramadol. He ordered it 3 times per day, PRN (as needed). So, you will need to ask for it from the nurse at the med passes" (*id.* at 22).

In addition, Plaintiff requested x-rays "to show how bad his hip and spine [were]" and asked to see an "orthopedic" but "Dr. Jones refused both requests." Dr. Jones stated it was "his policy, no narcotics, and n[either] he nor the sheriff will pay for [Plaintiff] to have follow up treatment." A record attached to the Amended Complaint reflects a "request" by "David M. Jones MD MHP" on August 13, 2015 on behalf of the Plaintiff saying "P[atien]t would like to get his hip replaced while

---

[2]During initial review, the Honorable Lewis T. Babcock ordered that the Amended Complaint be dismissed, except for claims brought against Dr. Jones (docket #27); accordingly, the Court will consider only those facts concerning Dr. Jones and his relation to the allegations in this matter.

[3] "A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal." *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

in jail d/t severe DJD." Docket #6 at 23. The same record indicates a response from "MGeppert MD" saying, "I don't feel an elective surgery of this nature should be done while in jail due to potential for infection and complications. P[atien]t will need to pursue this elective surgery at release." *Id.* Plaintiff alleges he suffers "severe chronic pain with possible permanent hip damage."

## II.    Procedural History

Based upon these factual allegations, Plaintiff alleges that Defendant deprived him of his Eighth and/or Fourteenth Amendment rights against cruel and unusual punishment by Defendant's deliberate indifference to Plaintiff's serious medical needs, and also violated the Americans with Disabilities Act ("ADA"). Amended Complaint, docket #6. Plaintiff requests compensatory damages as relief against the Defendant, and asks that Defendant be ordered to approve follow-up treatment by an orthopedic specialist and to "change his policy of no narcotics when prescribed. *Id.* at 16. Finally, Plaintiff attests that he is "under a life sentence[;] no release date as of yet." *Id.*

Defendant responded to the Amended Complaint by filing the present motion on March 14, 2016 arguing that Plaintiff fails to state plausible claims for violation of the ADA and the Eighth Amendment. Plaintiff counters that he is "declared disabled by the disability court on Speer Blvd. in downtown Denver"; Defendant has many complaints and/or lawsuits pending against him; Defendant never examined him despite his complaints of severe pain; he suffers a "serious medical need" under the law; and Plaintiff was not a detainee as suggested by Defendant, but a "sentenced inmate" at the Arapahoe County Jail at all times relevant to the operative complaint. *See* docket #39. Defendant replies that Plaintiff's allegations and argument fail to demonstrate he is a qualified individual with a disability as required under the ADA, and the pleading fails to allege the Defendant's requisite state of mind and a "serious medical need" as required for the Eighth

Amendment.

## **LEGAL STANDARDS**

### I.     **Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

4

II.     **Treatment of a Pro Se Plaintiff's Complaint**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

Plaintiff's claims against Defendant may be liberally construed to assert violations of the ADA and the Eighth Amendment for deliberate indifference to a serious medical need. The Court will analyze each claim in turn.

A.     ADA

Title II of the Americans with Disabilities Act states, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

5

discrimination by any such entity." *See* 42 U.S.C. § 12132. This provision applies to inmates in detained in state prisons or county jails. *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998); *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits or discrimination was by reason of a disability." *Robertson*, 500 F.3d at 1193.

The Court notes the Amended Complaint mentions nothing about whether Plaintiff was "qualified," whether he had a "disability" as defined by the statute, or whether the Defendant was motivated by discrimination when he refused to provide Plaintiff pain medication and/or treatment by an orthopedic specialist. *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (although discriminatory motive need not be the sole reason for the defendant's actions, it must be a "determining factor"). Nevertheless, Title II of the ADA imposes no liability against individuals. *A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1254 (D. Colo. 2011) (citing *Montez v. Romer*, 32 F. Supp. 2d 1235, 1241 (D. Colo. 1999)). Accordingly, the Plaintiff's ADA claim cannot proceed against the Defendant, an individual, and must be dismissed.

B.    Eighth Amendment[4]

---

[4]Defendant asserts that Plaintiff does not allege whether he was detained before trial or convicted at the time of the events described in the Amended Complaint for purposes of determining whether the Eighth or the Fourteenth Amendment applies here. Motion, n.4, docket #37 at 3. The Court disagrees; on the signature page of the operative pleading, Plaintiff states, "I am under a life sentence[;] no release date as of yet." Docket #6 at 16. Taking this statement as true, the Eighth Amendment applies here. *See Estate of Booker v. Gomez*, 745 F.3d 405, 430 n.30 (10th Cir. 2014) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Although pretrial

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established that "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

---

detainees are protected under the Due Process Clause rather than the Eighth Amendment, this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.")).

The subjective component is met if the Plaintiff demonstrates Defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Id.* at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Defendant argues that Plaintiff fails to allege either a serious medical need or a sufficiently culpable state of mind for the Eighth Amendment's subjective component. Plaintiff counters that "a condition need not be life threatening to be deemed a serious medical need" and that Judge Babcock found during initial review that "the plaintiff was in imminent danger of serious physical injury." Docket #39 at 3. He also contends that Defendant knew Plaintiff was prescribed medication by a Kaiser Permanente doctor for pain in his hip, which was "so badly deteriorating and needing replacement" and for which he requires a cane. *Id.* at 4. The Court will address each of Defendant's contentions in turn.

8

1.      *Does Plaintiff's Alleged Pain Constitute a Sufficiently Serious Medical Need?*

First, the Court agrees with Plaintiff that his condition need not be life-threatening to fall under the protection of the Eighth Amendment. The Tenth Circuit has recognized that extreme pain and suffering can establish a sufficiently serious harm to be cognizable under the Eighth Amendment. *Mata*, 427 F.3d at 755. The Tenth Circuit has clarified, however, that whether a medical need is "sufficiently serious" to satisfy the objective test is not determined "exclusively by the symptoms presented at the time the prison employee has contact with the prisoner," but rather by "whether the alleged harm . . . is sufficiently serious." *Id.* at 753. Thus, the objective component is satisfied by an inmate's report of pain only when the evidence shows that the pain was caused by a "sufficiently serious" medical condition. *See id.* (severe chest pain resulting in a heart attack satisfied the objective prong); *see also Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (holding that the objective prong was satisfied where plaintiff's "pain was so severe that he collapsed, vomited, and believed he was dying" and the pain was ultimately found to be caused by kidney stones).

Here, to demonstrate the severity of his condition, Plaintiff points to Judge Babcock's March 1, 2016 order in which his Honor found "that on October 13, 2015, Plaintiff was in imminent danger of serious injury." Docket #27 at 3. The Court is not persuaded. Judge Babcock made this finding not in reviewing the merits of the case, but in the context of his conclusion that "[b]ecause on three or more occasions, Plaintiff has brought an action that was dismissed as legally frivolous or for failure to state a claim, he is subject to filing restrictions under § 1915(g)." *Id.* at 2. Section 1915(g) states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions,

> while incarcerated or detained in any facility, brought an action or appeal in a court
> of the United States that was dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  To satisfy the imminent danger exception, Plaintiff was required to make "specific, credible allegations of imminent-danger of serious physical harm." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011) ("the statute's use of the present tense shows that a prisoner must have alleged an imminent danger at the time he filed his complaint") (citations omitted).  Accordingly, Judge Babcock merely concluded that Plaintiff satisfied the imminent danger exception by *alleging* sufficient facts to overcome the statutory filing restriction.

Plaintiff also argues that his condition was diagnosed by a physician, Dr. Denise Hunter at Kaiser Permanente, as mandating treatment.  He alleges that he arranged for Dr. Hunter to fax her prescription for pain medication for Plaintiff's hip condition to Dr. Jones at the facility.  Taking Plaintiff's allegations as true, the Court must agree that Plaintiff's hip pain constitutes a sufficiently serious condition "that has been diagnosed by a physician as mandating treatment" for purposes of analyzing the motion to dismiss.  *See Sealock*, 218 F.3d at 1209.

The Court notes that the Amended Complaint and its attachments imply a "delay" in medication treatment, as opposed to an outright refusal by Dr. Jones.  *See* docket #6 at 22.  Where the claimed harm is the result of a delay in receiving medical care, such a delay "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210.

The Tenth Circuit has held that severe pain lasting several hours as the result of a delay in treatment is a sufficiently serious medical need to satisfy the objective prong, while noting that "[c]ertainly, not every twinge of pain suffered as the result of delay in medical care is actionable."

10

*Id.*; *see also Mata*, 427 F.3d at 754 (finding that, as in *Sealock*, "severe chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard"). The objective standard does not require proof of a permanent injury or a showing that the defendant caused the harm directly; evidence that the medical need was serious and the delay "unnecessarily prolonged [Plaintiff's] pain and suffering" is sufficient. *Sealock*, 218 F.3d at 1210 n. 5 ("Even if appellant failed to show that his heart was damaged by the delay, however, we believe he has shown that his need was sufficiently serious to require prompt medical attention.").

Here, Plaintiff alleges the delay in treatment has caused him "possible permanent hip damage." Taking this allegation as true, the Court must conclude Plaintiff plausibly states a sufficiently serious medical need protected by the Eighth Amendment.

       2.     *Do the Allegations Demonstrate Defendant Knew and Disregarded a Substantial Risk of Harm?*

The allegations reflect that Dr. Jones "knew" Plaintiff suffered pain in his hip and back; thus, the question is whether the allegations demonstrate Defendant disregarded a substantial risk of harm in denying or delaying treatment.

"So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). In *Self*, the Tenth Circuit held that the "subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his medical judgment." *Id.* at 1232. "[D]ecisions as to whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's missed

11

diagnosis or delayed referral is not actionable. *Id.* "Obviousness" may arise in cases where: (1) a medical professional is aware of his inability to provide adequate treatment, but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

Here, Plaintiff's allegations that Defendant refused to have x-rays taken or to send him to an orthopedic specialist demonstrate simply that Defendant "exercised his medical judgment." Nothing in the Amended Complaint indicates an "extraordinary degree of neglect"; for example, Plaintiff does not allege that his physical abilities have worsened, such as that his limp has intensified or he can no longer walk or move, and the Defendant completely ignored such problems.

Likewise, Defendant's alleged delay in ordering Plaintiff's requested pain medication does not demonstrate he disregarded a substantial risk of harm. A delay in treatment that is unintentional, or even negligent, however serious the harm, does not violate the Constitution. *Sealock*, 218 F.3d at 104-05 (deliberate indifference "is manifested ... by prison guards in intentionally denying or delaying access to medical care"); *see also Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) ("inadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to deliberate indifference to serious medical needs."); *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiff alleges that Defendant treated him with Tylenol, Aleve, and Indocin for his pain, but none worked and, eventually, Defendant ordered the requested Tramadol. At most, these allegations merely reflect negligence, which is insufficient to state a constitutional violation.

Rather, the Court agrees that Plaintiff's allegations against Defendant merely state "a difference of opinion about the course of medical treatment. An inmate is not entitled to any particular course of treatment while incarcerated. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *Self*, 439 F.3d at 1231 ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"); *Estelle*, 429 U.S. at 107 (plaintiff who "suggest[ed] a number of options that were not pursued," when he saw medical personnel on seventeen occasions and was given medication to treat his high blood pressure and back pain, did not state an Eighth Amendment claim for deliberate indifference). Rather, a prison doctor is "free to exercise his or her independent professional judgment" in assessing the medical treatment necessary. *Callahan*, 471 F.3d at 1160.

The Court concludes that Plaintiff has failed to state a plausible claim against Defendant for a violation of the Eighth Amendment, and will grant Defendant's motion to dismiss the claim.

## IV. Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365

(10th Cir. 1991)).

Here, the Plaintiff, although proceeding *pro se*, appears to be familiar with the applicable legal concepts and landscape, and he has a firm grasp of the facts and issues in this case, particularly considering that he has filed several lawsuits in the past.  Docket #27.  The legal issues stemming from the alleged constitutional and statutory violations are not overly complex, novel, or difficult to state or analyze.  Further, allowing Plaintiff to amend his Complaint to cure any deficiencies would be futile because the Court has determined that the well-pleaded facts, taken as true, do not state viable causes of action. The Court cannot conceive of any factual averments that would cure the stated defects.

Moreover, the Plaintiff was alerted to the insufficiency of his claims against Defendant during initial review and with the filing of the present motion but failed to seek leave to amend his allegations.  In other words, the Plaintiff was given notice and the opportunity to cure his defective allegations, but he did not seize the opportunity. *See Bellmon*, 935 F.2d at 1109-10 ("a motion to dismiss giv[es] plaintiff notice and opportunity to amend his complaint").  In addition, Plaintiff filed a motion to amend his Amended Complaint seeking to drop the other named Defendants and bring his claims only against Dr. Jones (docket #26); Judge Babcock denied the motion as "unnecessary" based on his order on initial review (docket #27).  Consequently, the Court will deny the Plaintiff *another* opportunity to amend his pleading in this matter.

## CONCLUSION

In sum, the Court finds that Plaintiff fails to state a plausible claims for violations of the ADA and the Eighth Amendment against Defendant, and will deny Plaintiff leave to amend his Amended Complaint.

THEREFORE, Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)[filed

March 14, 2016; docket #37] is **granted**.  Plaintiff's claims against the Defendant are dismissed.

The Clerk of the Court is directed to close this case.

Entered and dated at Denver, Colorado, this 27th day of April, 2016.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

15